FILED

DEC 12 2022

U.S. DISTRICT COURT
ELKINS WV 26241

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **Peter C. Alfano III**<br>407 S. King Street<br>Leesburg, VA 20175<br><br>and<br><br>**Crista S. Alfano**<br>407 S. King Street<br>Leesburg, VA 20175<br><br>*Plaintiffs*<br><br>v.<br><br>**Snowshoe Mountain, Inc.**<br>10 Snowshoe Drive<br>Snowshoe, WV 26209<br><br>*Defendant* | Civil No.  2:22cv 21<br><br>Kleeh<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs hereby submit this Complaint against Defendant and allege, on knowledge as to their own actions and experiences and otherwise upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This case involves damages sustained by Plaintiffs as a result of an infestation of bed bugs at Defendant's ski resort in Snowshoe, West Virginia ("**Snowshoe Mountain**"). The infestation was caused and exacerbated by the willful and reckless conduct of Defendant and its agents, who knew or should have known that there was an

1

active bed bug infestation which would have rendered its units unsanitary and unfit for human habitation.

## Jurisdiction and Venue

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Virginia and citizens of West Virginia and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district and all defendants reside in West Virginia.

4.  Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Parties

5.  Plaintiffs are individuals who are, and were at all times relevant hereto, residents of Leesburg, Virginia.

6.  Defendant is a corporation organized under the laws of West Virginia with its principal place of business in Snowshoe, West Virginia.

## Factual Background

7.  On September 29, 2020, Plaintiff Peter C. Alfano, III ("**Mr. Alfano**") reserved a holiday rental for himself, his wife Plaintiff Crista S. Alfano ("**Ms. Alfano**"), and their three minor children, for the period from December 3, 2020, to December 7,

2020. The holiday rental was a property operated and managed by Defendant, located within Snowshoe Mountain at the address of Black Bear Crossing #20, Snowshoe, WV ("**Black Bear 20**").

8. On the same date, Mr. Alfano executed an electronic "Snowshoe Resort Vacation Rental Agreement" with Defendant (the "**Agreement**") through Defendant's website. A copy of the Agreement is attached hereto as **Exhibit A**.

9. Mr. Alfano paid a total of $1,920.20 to Defendant to reserve Black Bear 20 in accordance with the Agreement.

10. In the Agreement, Defendant made numerous representations regarding the cleanliness of Black Bear 20, among them:

> "Check-in time is based on readiness of the home and cannot be guaranteed. Check-in time during Winter Season will be begin at 5:00 PM EST. Due to our high standards of cleanliness, there is a possibility that your vacation rental may not be ready until later, especially during peak season, so please make your arrival arrangements accordingly." (Page 2)

> "Snowshoe Resort makes every effort to prepare all units for occupancy at the given times. However, in some instances it may be necessary to delay occupancy until the unit has been properly cleaned and inspected." (Page 3)

> "Our homes are well maintained and clean." (Page 4)

3

11.   Plaintiffs arrived at Snowshoe Mountain on Thursday, December 3, 2020, and settled into Black Bear 20 with their three minor children.

12.   The next evening, Friday, December 4, 2020, around 8:30 p.m., Ms. Alfano noticed scores of insect bite marks across her shoulders, upper back, and from the upper back to the chest area. Ms. Alfano then went into the master bedroom of Black Bear 20, where she captured a small insect in the seam of the mattress. Through online research, Plaintiffs recognized the insect as a "bed bug," a type of insect that commonly feeds on human blood at night while people are sleeping in their beds.

13.   At around 9:00 p.m., Plaintiffs called Snowshoe's resort help line and explained the situation. A representative of Defendant arrived at Black Bear 20 around 9:30pm. The representative took pictures of the bite marks on Ms. Alfano's shoulders and took the insect that was captured by Plaintiffs.

14.   After seeing the bite marks and the insect, the representative offered to move Plaintiffs to the connected and adjacent rental property located at Black Bear Crossing #19 ("**Black Bear 19**"), the only available unit within walking distance of Black Bear 20. The representative further instructed Plaintiffs to run their personal items through the clothes dryer the next day to kill any remaining bed bugs or eggs.

15.   Plaintiffs, acting in reliance upon Defendant, believed that Black Bear 19 was not infested, and that Defendant would not place Plaintiffs in another unit at-risk for bed bugs. Plaintiffs complied with the representative's instructions and moved their belongings and children to Black Bear 19 that night.

4

16. During the day of Saturday, December 5, 2020, Plaintiffs spent the day cleaning personal items and running all clothing and shoes in the dryer, as instructed by the representative of Defendant. The move to Black Bear 19, and the subsequent use of the dryer at Black Bear 19, resulted in personal items being lost or damaged, including: 2 children's shirts, an adult pair of shoes/slippers, and certain ski clothing damaged by the drier.

17. Plaintiffs had no prior exposure to bed bugs and were not knowledgeable about risks and mitigation measures relating to a bed bug infestation. Plaintiffs later learned that bed bugs are known to hide within and travel through walls and ceilings to adjoining units. The master bedrooms of Black Bear 20 and Black Bear 19 shared a common wall. Because of the shared wall and location of the units, Defendant should have known that Black Bear 19 was also very likely to have had bed bugs. Defendant made no mention of this risk to Plaintiffs.

18. Despite moving to Black Bear 19, the bed bug bites continued to worsen into the following week, becoming more inflamed every day. Plaintiffs left Snowshoe Mountain ahead of schedule on the evening of December 6.

19. In the weeks following Plaintiffs' return to Virginia, the bites became red welts typical of inflamed bed bug bites, and progressively worsened, becoming intensely itchy and painful and causing a rash.

20. Ms. Alfano has also suffered various psychological effects, including trouble sleeping, chronic fatigue, paranoia, and anxiety, that are common symptoms

following bed bug bites. Ms. Alfano still suffers from paranoia, psychosomatic symptoms, and nervousness and anxiety about travelling, and is currently receiving care to address these symptoms.

21.  As he saw the effects of the bed bugs on his wife, Mr. Alfano likewise suffered harm to his mental health, including paranoia, psychosomatic symptoms, and trouble sleeping.

22.  In April 2021, approximately four months after the incident at Snowshoe Mountain, Ms. Alfano discovered three new bite marks, close together, in a row pattern indicative of bed bugs.

23.  On April 25, 2021, an inspection of the Home was conducted by Green Thermal Bed Bug Exterminators of Ashburn, VA. The summary of findings from this inspection stated that:

> "During our examination of Mr. Alfano's property conducted on April 25th, 2021, we noticed a few signs that [a] recent infestation of Bed Bugs has occurred. Bed Bug exoskeletons were fresh (week old) - most of these body shells were adult sized. Bed Bugs take 10-12 weeks to reach this size.   . . . [B]efore a bed bug begins to feed they go through an initiation process making itself at home first before feeding. This time frame is about 2-4 months."

24.  On Tuesday, April 27, 2021, Green Thermal Bed Bug Exterminators conducted a complete heat treatment and insecticide spraying of the Home to exterminate the bed bugs at a cost of over $2,000.

25.  In the extermination and remediation process, Plaintiffs disposed of a mattress, box spring, and other furnishings and personal effects.

## Count 1

### Battery

26.  Plaintiffs repeat the allegations contained in Paragraphs 1 through 25.

27.  By renting Black Bear 20 to Plaintiffs with the knowledge of a bedbug infestation therein, Defendant and its agents engaged in an intentional touching of Plaintiffs that was unwanted and without justification, excuse, or the consent of Plaintiffs.

## Count 2

### Fraud

28.  Plaintiffs repeat the allegations contained in Paragraphs 1 through 25.

29.  In inducing Plaintiff to reserve lodging at Black Bear 20 and in inviting Plaintiff to move to Black Bear 19 while knowing of potential bedbug infestations at the properties, Defendant and its agents made misrepresentations of material facts regarding the safety and sanitation of the properties.

30. The misrepresentations were either knowingly and intentionally made with the intent to mislead Plaintiffs, or innocently or negligently made with the intent that Plaintiffs would rely upon them.

31. Plaintiffs relied upon the misrepresentations and were damaged as a result.

## Count 3

### Intentional Infliction of Emotional Distress

32. Plaintiffs repeat the allegations contained in Paragraphs 1 through 25.

33. In inducing Plaintiff to reserve lodging at Black Bear 20 and in inviting Plaintiff to move to Black Bear 19 while knowing of potential bedbug infestations at the properties, Defendant and its agents intended their specific conduct while they knew or should have known that their conduct would likely result in emotional distress.

34. Defendant's conduct was outrageous and intolerable in that it offended the generally accepted standards of decency and morality.

35. Plaintiffs suffered severe emotional distress which was proximately caused by Defendant's conduct.

## Count 4

### Gross Negligence

36. Plaintiffs repeat the allegations contained in Paragraphs 1 through 25.

37. Defendant and its agents failed to use ordinary care to maintain the areas of the Lodging in a clean and reasonably safe condition.

38. Defendant and its agents failed to warn Plaintiffs of the unsafe condition on their premises, namely, the infestation of bed bugs; to the contrary, Defendant expressly led Plaintiffs to believe that they would receive safe and sanitary lodging.

39. Defendant and its agents knew or should have known that the unsafe condition involved an unreasonable risk of harm to Plaintiffs.

40. Defendant and its agents knew or should have known that Plaintiffs would not discover or realize the unsafe condition.

41. Plaintiffs had no reason to know of the unsafe condition and the risk involved.

42. Defendant's negligence showed such indifference to others as constitutes an utter disregard of caution amounting to a complete neglect of the safety of others.

43. Defendant's negligence was a proximate cause of Plaintiffs' injuries.

## Count 5

### Negligent Infliction of Emotional Distress

44. Plaintiffs repeat the allegations contained in Paragraphs 1 through 25 and 36 through 43.

45. Defendant's negligence was a proximate case of emotional distress experienced by both Plaintiffs.

46. Plaintiffs' emotional distress naturally resulted in physical injuries to Plaintiffs.

47. Plaintiffs suffered damages as a result of Defendant's acts.

## Count 6

## Willful Violations of Virginia Consumer Protection Act ("VCPA")

48. Plaintiffs repeat the allegations contained in Paragraphs 1 through 25.

49. By stating that it had "high standards of cleanliness" and that "our homes are well maintained and clean," and that it would "delay occupancy until the unit has been properly cleaned and inspected," Defendant and its agents willfully misrepresented that its services were of a particular standard, quality, or grade, in violation of Va. Code § 59.1-200(A)(6).

50. By stating that it had "high standards of cleanliness" and that "our homes are well maintained and clean," and that it would "delay occupancy until the unit has been properly cleaned and inspected," Defendant and its agents willfully advertised the properties with the intent not to sell them as advertised, in violation of Va. Code § 59.1-200(A)(8).

51. By stating that it had "high standards of cleanliness" and that "our homes are well maintained and clean," and that it would "delay occupancy until the unit has been properly cleaned and inspected," Defendant and its agents willfully misrepresented that adequate cleaning services were performed on the properties, in violation of Va. Code § 59.1-200(A)(10).

### Count 7

### Breach of Contract and Implied Warranty of Habitability

52. Plaintiffs repeat the allegations contained in Paragraphs 1 through 25.

53. The Agreement constituted a contract between Mr. Alfano and Defendant.

54. Ms. Alfano was a third-party beneficiary to the Agreement.

55. Defendant and its agents breached the Agreement by providing property infested with bedbugs and unfit for habitation, in violation of the express warranties in the Agreement and the implied warranty of habitability.

56. Plaintiffs suffered direct and consequential damages from the breach.

### Demand for Relief

Plaintiffs demand:

A. compensatory, consequential, general, and punitive damages, including damages for pain and mental suffering, in amounts to be determined by a jury but in no event less than $75,000;

B.   treble damages pursuant to the VCPA (Va. Code § 59.1-204(A));

C.   attorneys' fees and court costs pursuant to the VCPA (Va. Code § 59.1-204(B)) and any other applicable law;

D.   interest on the judgment and pre-judgment interest on damages as allowed by law; and

E.   such other and further relief as this honorable Court may deem proper.

**Plaintiffs demand a trial by a jury of their peers on all issues so triable.**

Dated: December 7, 2022

*/s/ Peter C. Alfano, III*
**Peter C. Alfano, III**
407 S. King Street
Leesburg, VA 20175
Tel. 202-352-0084
E-mail:   peter.alfano@outlook.com

*/s/ Crista S. Alfano*
**Crista S. Alfano**
407 S. King Street
Leesburg, VA 20175
Tel. 202-352-0084
E-mail:   peter.alfano@outlook.com