**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**PETER C. ALFANO III,**
**and CRISTA S. ALFANO,**

        **Plaintiffs,**

**v.**                                      **CIVIL ACTION NO.: 2:22-CV-21**
                                                     **(JUDGE KLEEH)**

**SNOWSHOE MOUNTAIN INC.,**
**a West Virginia corporation**

        **Defendant.**

**AMENDED REPORT AND RECOMMENDATION RECOMMENDING**
**DEFENDANT'S PARTIAL MOTION TO DISMISS, [ECF NO. 10], BE GRANTED, AND**
**COUNTS I TO VI OF COMPLAINT, [ECF NO. 1], BE DISMISSED WITH PREJUDICE**

On May 16, 2023, the undersigned submitted a Report and Recommendation to this Court, [ECF No. 21], recommending that Plaintiffs' Complaint be dismissed in its entirety with prejudice. Upon review, the undersigned **FINDS** Count VII remains viable, **VACATES and TERMINATES** his prior Report and Recommendation, *inter alia*, so as to provide clarification about the effect of the same, and respectfully **SUBMITS** the following Amended Report and Recommendation for the Court's consideration.

On December 12, 2022, *pro se* Plaintiffs Peter C. Alfano, III, and Crista S. Alfano, ("Plaintiffs"), filed a Complaint against Defendant Snowshoe Mountain Inc. ("Defendant") [ECF No. 1 at 2-3]. On the same date, the Court, by the Honorable Thomas S. Kleeh, referred this matter to the undersigned U.S. Magistrate Judge, for written orders or recommendations as appropriate. [ECF No. 4].

On February 13, 2023, Defendant filed a Motion to Dismiss, [ECF No. 10], seeking the dismissal of Counts 1 through VI of Plaintiffs' Complaint. On March 14, 2023, with leave from

the Court, [ECF Nos. 15, 16], Plaintiffs filed their Response to Defendant's Motion to Dismiss. [ECF Nos. 18]. On March 21, 2023, Defendant filed a Reply. [ECF No. 19].

Upon consideration of the same, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [ECF No. 10] be **GRANTED,** Counts I through VI of Plaintiffs' Complaint, [ECF No. 1], be **DISMISSED WITH PREJUDICE**, and Count VII proceed to scheduling and discovery in normal course.

## I. FACTUAL BACKGROUND[1]

On September 29, 2020, Plaintiffs Peter C. Alfano, III, and Crista S. Alfano reserved a rental cabin for their family at the Black Bear 20 located in Snowshoe, West Virginia from December 3, 2020, to December 7, 2020. [ECF No. 1 at 2-3]. On December 3, 2020, Plaintiffs arrived at Snowshoe Mountain and began their stay in Black Bear 20 with their three minor children. Id. at 4. On the evening of Friday, December 4, 2020, Plaintiff Crista S. Alfano noticed bite marks on her shoulders, upper back, and chest. Id. Plaintiff, Ms. Alfano, subsequently went into the master bedroom of Black Bear 20 and found a small insect in the seam of the mattress which she identified as a bed bug through online research. Id.

Plaintiffs called Snowshoes' help line, and a representative arrived at Black Bear 20 to speak with Plaintiffs. Id. Plaintiffs were moved to another unit, Black Bear 19, that evening; Plaintiffs were also advised to run their personal items through the dryer to kill any remaining bed bugs or eggs at that time. Id. at 5. Plaintiffs allege that the bites on Ms. Alfano worsened over the

---

[1] In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs. Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Additionally, a court must "liberally construe" complaints filed *pro se*. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009).

next two days, causing Plaintiffs to leave Snowshoe ahead of schedule on the evening of December 6, 2020. Id.

In April 2021, Plaintiff, Ms. Alfano, found three new bite marks on her person. Id. at 6. On April 25, 2021, the Plaintiffs home was inspected by Green Thermal Bed Bug Exterminators who found "a few signs that a recent infestation of Bed Bugs ha[d] occurred." Id. On April 27, 2021, Green Thermal Bed Bug Exterminators conducted a "heat treatment and insecticide [spray]" of the Plaintiffs home. Id at 7.

## II. PARTIES' CONTENTIONS

### A. Plaintiffs' Complaint

In their Complaint, Plaintiffs assert seven causes of action: (1) Battery; (2) Fraud; (3) Intentional Infliction of Emotional Distress; (4) Gross Negligence; (5) Negligent Infliction of Emotional Distress; (6) Willful Violations of Virginia Consumer Protection Act; and (7) Breach of Contract and Implied Warranty of Habitability. [ECF No. 1 at 7-11]. All of Plaintiffs' interactions with Defendant stem from Plaintiffs arrangements to stay in a holiday rental property, Black Bear Crossing 20, managed by Defendant.

Plaintiffs base their cause of action for Battery on the accusation that Defendant rented the vacation property to Plaintiffs "with the knowledge of a bedbug infestation therein," subsequently alleging that Defendant, through this action, "engaged in an intentional touching of Plaintiffs that was unwanted and without justification, excuse, or the consent of Plaintiffs."  [ECF No. 1 at 7].

Plaintiffs base their cause of action for Fraud on the accusation that Defendant induced Plaintiffs to reserve lodging "while knowing of potential bedbug infestations at the properties[,]" [ECF No. 1 at 7-8], as well as "misrepresentations of material facts regarding the safety and sanitation of the properties . . . and that these "misrepresentations were either knowingly and

intentionally made with the intent to mislead the Plaintiffs, or innocently or negligently made with the intent that Plaintiffs would rely upon them," and that Plaintiffs did in fact rely on these misrepresentations and were damaged as a result. [Id. at 7-8].

Plaintiffs base their cause of action for Intentional Infliction of Emotional Distress on the assertion that by inducing Plaintiffs to reserve lodging while knowing of a potential bedbug infestation, Defendant "knew or should have known that their conduct would likely result in emotional distress." [ECF No. 1 at 8]. Plaintiffs assert that this conduct was "outrageous and intolerable in that it offended the generally accepted standards of decency and morality," and that "Plaintiffs suffered severe emotional distress which was proximately caused" by said conduct. [Id. at 8].

Plaintiffs base their cause of action for Gross Negligence off the allegations that "Defendant . . . failed to use ordinary care to maintain the areas of the Lodging in a clean and reasonably safe condition;" Defendant failed to warn Plaintiffs of this unsafe condition and instead "expressly led Plaintiffs to believe that they would receive safe and sanitary lodging; Defendant should have known of the unsafe condition and that this condition "involved an unreasonable risk of harm to Plaintiff;" that Plaintiffs "would not discover or realize the unsafe condition;" that Plaintiffs had no reason to "know of the unsafe condition" or the risks associated with such condition; that Defendant showed indifference to others constituting an utter disregard or caution and a complete neglect of others safety; and that "Defendants' negligence was a proximate cause of Plaintiffs' injuries." [Id., at 8-9].

Plaintiffs base their cause of action for Negligent Infliction of Emotional Distress on the assertion that "Defendant's negligence was a proximate cause of emotional distress experienced

by both plaintiffs," that "Plaintiffs' emotional distress naturally resulted in physical injuries to Plaintiffs," and Plaintiffs suffered damages as a result. [Id., at 9-10]

Plaintiffs base their cause of action for Willful Violation of Virginia Consumer Protection Act in three areas. First, Plaintiffs allege that Defendant violated Va. Code §59.1-200(A)(6), by willfully misrepresenting that Defendant's "services were of a particular standard, quality, or grade." [Id. at 10]. Second, Plaintiffs allege that Defendant violated Va. Code §59.1-200(A)(8), by willfully advertising the rental properties as "well maintained and clean," and that Defendant would "delay occupancy until the unit has been properly cleaned and inspected." [Id., at 10]. Finally, Plaintiffs allege Defendant violated Va. Code §59.1-200(A)(10), by willfully misrepresenting "that adequate cleaning services were performed on the properties." [Id., at 11].

Plaintiffs base their cause of action for Breach of Contract and Implied Warranty of Habitability on the assertion that Defendant breached its agreement with Plaintiffs by "providing property infested with bedbugs and unfit for habitation, in violation of the express warranties in the Agreement and the implied warranty of habitability." [Id. at 11].

**B. Defendant's Motion to Dismiss Counts I Through VI of Complaint [ECF No. 10]**

In their Motion to Dismiss, Defendant raises eight arguments as to why Plaintiffs' claims should be dismissed. [ECF No. 10-1 at 1]. First, Defendant argues that Plaintiffs claims are barred by the applicable two-year statute of limitations, entitling Defendant to dismissal through an affirmative defense raised by Rule 12(b)(6). [ECF No. 10-1 at 5]. Second, Defendant argues that Plaintiffs fail to adequately plead a claim of battery. [ECF No. 10-1 at 7]. Third, Defendant argues that Plaintiffs fail to plead a claim of fraud with particularity. [ECF No. 10-1 at 8].  Fourth, Defendant argues that Plaintiffs fail to adequately plead a claim of Intentional Infliction of Emotional Distress. [ECF No. 10-1 at 11]. Fifth, Defendant argues that Plaintiffs fail to adequately

plead a claim of gross negligence. [ECF No. 10-1 at 12]. Sixth, Defendant argues that Plaintiffs fail to adequately plead a claim of Negligent Infliction of Emotional Distress. [ECF No. 10-1 at 15]. Seventh, Defendant argues that Plaintiffs fail to plead a claim under the Virginia Consumer Protection Act because West Virginia Law applies. [ECF No. 10-1 at 17]. Finally, Defendant argues that Counts I through IV are barred under the gist of the action doctrine. [ECF No. 10-1 at 18].

### C. Plaintiffs' Response to Snowshoe Mountain, Inc's Motion to Dismiss Counts I through IV of Complaint [ECF No. 18]

Plaintiffs' Response does not contain additional allegations against Defendant, or a new cause of action. Instead, Plaintiffs add additional details to their existing allegations, as follows: First, Plaintiffs assert that their claims did accrue within the applicable statute of limitations period and, for any claims that did not, those claims should be equitably tolled. [ECF No. 18, at 2]. Within this assertion, Plaintiffs claim that their harm occurred in April 2022, and therefore falls within the applicable statute of limitations period. Id. Additionally, Plaintiffs allege that they filed a complaint in their local court on December 8, 2021, and that Defendant received service on January 18, 2022. Id. Therefore, Plaintiffs allege that due to this prior filing that Defendant was "well aware of this action." Id. Second, Plaintiffs allege that their claim of battery is sufficiently pled because allegations plausibly show knowledge of renting an infested unit that caused physical harm. Id. at 3. Third, Plaintiffs allege that their claim of fraud is sufficiently pled with particularity because the material fact of an infestation was known to Snowshoe and not disclosed. Id. at 4. Fourth, Plaintiffs allege that their claim of Intentional Infliction of Emotional Distress is sufficiently pled because it plausibly alleges outrageous conduct, which presents a question of fact under West Virginia law. Id. at 5. Fifth, Plaintiffs allege that their claim of gross negligence is sufficiently pled

because allegations plausibly show Defendant breached a duty of care, which caused compensable harm. Id. at 6. Sixth, Plaintiffs allege that their claim of Negligent Infliction of Emotional Distress is sufficiently plead, and the tort cannot be contractually waived. Id. Seventh, Plaintiffs allege that their claim under the Virginia Consumer Protection Act is sufficiently pled because the allegations plausibly show that Defendant willfully advertised to Plaintiff in Virginia, caused harm to Plaintiff in Virginia and public policy would prevent blocking a Virginia Consumer Protection Act claim because of a contractual choice of law provision. Id. at 7. Finally, Plaintiff responds to Defendant's assertion that Plaintiffs claims for battery, fraud, IIED, gross negligence, and NIED are barred under the gist of action doctrine is misplaced Id. at 8.

**D. Defendant's Reply in Support of Defendant's Motion to Dismiss [ECF No. 19]**

In Defendant's Reply, Defendant responds to each new assertion made by Plaintiffs as follows. [ECF No. 19]. First, in response to Plaintiffs assertion that their claims accrued within the statute of limitations period, as Plaintiffs were harmed on December 4, 2020, but their injuries "manifested '[i]n the weeks following [their] return to Virginia," Defendant argues that since Plaintiffs were aware of the inflicted injury on December 4, 2020, the case should not be categorized as a "pure latent injury case" and therefore the statute of limitations should run from the date the injury was discovered: December 4, 2020. [ECF No. 19, at 2]. Second, in response to Plaintiffs' claim that the equitable tolling of the statute of limitations should apply as Plaintiffs were ignorant of the applicable statute of limitations and Defendant is not prejudiced by the delay, Defendant argues that Plaintiffs ignorance of the law is not a basis for equitable tolling. Id. at 3-4. Third, Defendant argues that Plaintiffs Response does not sufficiently plead an element of intent of the battery claim. Id. at 5. Fourth, Defendant argues that Plaintiffs Response "utterly fail[s] to plead the elements of the claim of fraud with particularity." Id. at 6. Fifth, Defendant argues that

Plaintiffs Response fails to plead a claim of Intentional Infliction of Emotional Distress. Id. at 8. Sixth, Defendant argues that Plaintiffs Response fails to state a claim of gross negligence. Seventh, Defendant argues that Plaintiffs Response fails to state a claim of Negligent Infliction of Emotional Distress. Eighth, Defendant argues that Plaintiffs Response fails to state a claim under the Virginia Consumer Protection Act. Finally, Defendant argues that Counts I through VI in Plaintiffs Complaint (here, Plaintiffs' claims of battery, fraud, intentional infliction of emotional distress, gross negligence, negligent infliction of emotional distress, and violations of the Virginia consumer protection act) are barred under the gist of the action doctrine. Id. at 12.

### III. LEGAL STANDARD

*Pro se* plaintiffs' claims are to be afforded liberal construction by courts. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A *pro se* complaint is subject to dismissal, however, if a court cannot reasonably read the pleadings to state a valid claim on which a plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Even in the case of *pro se* litigants, [courts] cannot be expected to construct full blown claims from sentence fragments). A court may not construct claimants' legal arguments for them, nor should it "conjure up questions never squarely presented." Beaudett, 775 F.2d at 1278.

Generally, parties are required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Correspondingly, a defendant may challenge a complaint which fails to set forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, a complaint must be supported by, "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). As the Supreme Court emphasized, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements," do not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, as the Fourth Circuit has noted, Rule 12(b)(6) requires a claimant to "articulate facts, when accepted as true . . . 'show' that [the claimant] has stated a claim entitling [them] to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Because the Court's jurisdiction is based on diversity, the applicable statute of limitations is determined by West Virginia state law. Shelton v. Crookshank, 3:17-CV-108, 2017 WL 9565841, at *9 (N.D.W. Va. Nov. 17, 2017) (citing Rowland v. Patterson, 852 F.2d 108, 110 (4th Cir. 1988) ("Federal courts sitting in diversity generally apply state statutes of limitations."))

## IV. ANALYSIS

### A. The undersigned recommends Plaintiffs' Counts I through VI be dismissed because they are time-barred by the applicable two-year statutes of limitations.

Under West Virginia law, "[e]very personal action for which no limitation is otherwise prescribed shall be brought . . . within two years." W. Va. Code § 55-2-12(b). "In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury." Dunn v. Rockwell, 689 S.E.2d 255, 264–65 (W. Va. 2009) (internal citation omitted).

In most cases, the typical plaintiff will "discover" the existence of a cause of action, and the statute of limitation will begin to run, at the same time that the actionable conduct occurs. Id. at 264–65. Whether a plaintiff "knows of" or "discovered" a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonably prudent person would have known, or by

the exercise of reasonable diligence should have known, of the elements of a possible cause of action. Id. at 265.

A five-step analysis should be applied to determine whether a cause of action is time-barred. Id. First, the court should identify the applicable statute of limitation for each cause of action. Id. Second, the court (or, if material questions of fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Id. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action. Id. Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Id. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. Id. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Id. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact. Id.

Claims for battery, fraud, intentional infliction of emotional distress, gross negligence, and negligent infliction of emotional distress have a two-year statute of limitations. Courtney v. Courtney, 127, 437 S.E.2d 436, 437 (W. Va. 1993) (battery claim has two-year statute of limitations period); Dunn v. Rockwell, 689 S.E.2d 255, 268 (W. Va. 2009) (fraud claim has two-year statute of limitations period); Richards v. Walker, 813 S.E.2d 923, 930 (W. Va. 2018) (IIED claim has two-year statute of limitations period); Birchfield v. Zen's Dev., LLC, 857 S.E.2d 422, 434 (W. Va. 2021) (negligence claim has two-year statute of limitations period). In addition,

Plaintiffs' claim under the Virginia Consumer Protection Act also has a two-year statute of limitations. *See* Va. Code Ann. § 59.1-204.1(A) ("Any individual action pursuant to §59.1-204 for which the right to bring such action first accrues on or after July 1, 1995, shall be commenced within two years after such accrual.").

As for Count One (Battery), "it is clear that damages for personal injuries arising out of an assault and battery are controlled by the two-year statute of limitations contained in W.Va.Code, 55–2–12(b). Courtney v. Courtney, 437 S.E.2d 436, 439 (W. Va. 1993); *see also* Shelton v. Crookshank, 3:17-CV-108, 2017 WL 9565841, at *9 (N.D.W. Va. Nov. 17, 2017) ("Under West Virginia law, a claim of assault and battery is subject to a two-year statute of limitations.")

As for Count Two (Fraud), "Under West Virginia law, claims for fraud and misrepresentation are governed by a two-year statute of limitation." Yoe v. Branch Banking & Tr. Co., No. 3:13-CV-173, 2014 WL 713283, at *7 (N.D. W. Va. Feb. 25, 2014), aff'd 585 F. App'x 178 (4th Cir. 2014) (citing W.Va. Code § 55-2-12)); *see also* McCausland v. Mason Cty. Bd. of Educ., 649 F. 2d 278, 279 (4th Cir. 1981).

As for Count Three (Intentional Infliction of Emotional Distress, "IIED"), "A claim for severe emotional distress arising out of a defendant's tortious conduct is a personal injury claim and is governed by a two-year statute of limitations under W.Va.Code, 55–2–12(b) (1959)." Courtney v. Courtney, 190 W.Va. 126, 437 S.E.2d 436 (1993); *see also* Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419, 432 (W. Va. 1998).

As for Count Four (Gross Negligence), "[n]egligence claims are governed by a two-year statute of limitation[s]." W. Va. Code Ann. § 55-2-12. Richards v. Walker, 813 S.E.2d 923 (W. Va. 2018).

As for Count Five (Negligent Infliction of Emotional Distress, "NIED"), It is undisputed that the underlying statute of limitations for . . . intentional or negligent infliction of emotional distress . . . is two years. Evans v. United Bank, Inc., 775 S.E.2d 500, 508 (W. Va. 2015).

As for Count Six (Violations of the Virginia Consumer Protection Act, "VCPA"), the statute of limitations for actual fraud and constructive fraud, as well as a VCPA violation, is two years. Code §§ 8.01–243(A) and 59.1–204.1(A), respectively. Schmidt v. Household Fin. Corp., II, 661 S.E.2d 834, 838–39 (Va. 2008).[2]

Here, Plaintiffs' claims arise from a stay at the rental unit Black Bear 20, located on Defendant's property in Snowshoe, West Virginia. As stated in the Complaint, on the evening of Friday, December 4, 2020, Plaintiffs became aware of bites to the body of Plaintiff Crista Alfano as well as the presence of a bed bug in the seam of Plaintiffs mattress. [ECF No. 1, at 4]. Plaintiffs called Defendant to report their findings and a representative of Defendant arrived in around 30 minutes, moved the family to an adjacent rental property, and instructed plaintiffs to run their personal items through the clothes dryer to kill any remaining bed bugs or eggs. Id.

In taking a view most favorable to the Plaintiffs, the statute of limitations began to run on December 4, 2020, when the events giving rise to this cause of action began with the discovery of bites to Plaintiff Crista Alfano, and the knowledge that bed bugs and bed bug eggs can be

---

[2] An applicable section of the Virginia code (§ 8.01–243 of the Code of Virginia) was revised in 2023. The revised version of the code states: "[u]nless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." VA LEGIS 27 (2023), 2023 Virginia Laws Ch. 27 (H.B. 1647). However, "[i]n actions for fraud or mistake, [or] in actions for violations of the Consumer Protection Act [the cause of action accrues] when such fraud, mistake, misrepresentation, deception, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered." June 08, 2007 Code § 8.01–249(1), see also STB Marketing Corp. v. Zolfaghari, 240 Va. 140, 144, 393 S.E.2d 394, 397 (1990) (holding that a cause of action for fraud does not accrue until the plaintiff "knew or reasonably should have known of the fraud."); Schmidt v. Household Fin. Corp., II, 661 S.E.2d 834, 838–39 (Va. 2008).

transferred through personal items. Because Plaintiffs filed this Complaint on December 12, 2022,

beyond the two-year statute of limitations for all six of the above causes of action, their claims are

time-barred.

Consequently, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss, [ECF

No. 10], be **GRANTED** and that Counts I through VI of Plaintiffs' Complaint be **DISMISSED**

**with prejudice.**

**B.  The undersigned recommends Counts I through VI be dismissed because Plaintiffs are time-barred by the applicable two-year statutes of limitations, and the theory of equitable tolling does not apply.**

In Plaintiffs' Response to Defendant's Motion to Dismiss, Plaintiffs claim that even if

time barred, Plaintiffs should have available to them the theory of equitable tolling.

A corollary to the continuous representation doctrine is the equitable tolling theory of a

"continuing tort," which states: "Where a tort involves a continuing or repeated injury, the cause

of action accrues at, and the statute of limitations begins to run from the date of the last injury or

when the tortious overt acts or omissions cease." Dunn v. Rockwell, 689 S.E.2d 255, 272 (W.

Va. 2009).  *But see*, Ricottilli v. Summersville Mem'l Hosp., 425 S.E.2d 629, 632 (W.Va. 1992)

("a continuing tort requires a showing of repetitious, wrongful conduct.... [A] wrongful act with

consequential continuing damages is not a continuing tort.").

That being said, the Fourth Circuit has held that even in the case of a *pro se* Plaintiff,

"ignorance of the law is not a basis for equitable tolling." *See* U.S. v. Sosa, 364 F.3d 507, 512

(4th Cir. 2004) ("[h]aving considered these proffered bases, we conclude that jurists of reason

would not find debatable the conclusion that equitable tolling is not justified here. [Plaintiffs]

first three contentions are variations on the same theme-that he did not understand how the

statute of limitations operated in his case. But, even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling").

Here, Plaintiffs argue that equitable tolling applies to their claims because, "[e]quitable tolling focuses on a 'plaintiff's excusable ignorance of the limitations period and lack of prejudice to the defendant.'" [ECF No. 18, at 3]. Plaintiffs assert that they are not represented by counsel and therefore were unaware of the statute of limitations period, and that Defendant knew of Plaintiffs' claim against them, both evidenced by Plaintiffs prior filing against Defendant in Loudoun County, VA on December 8, 2021. [ECF No. 18, at 2-3]. Plaintiffs rely on Adkins v. Clark in making this claim, stating that "[e]quitable tolling focuses on a 'plaintiff's excusable ignorance of the limitations period and lack of prejudice to the defendant.'" [ECF No. 18, at 3].

In Adkins, however, the Supreme Court of Appeals of West Virginia further states, "statutes of limitations are favored in the law and cannot be avoided unless the party seeking to do so brings himself strictly within some exception. It has been widely held that such exceptions 'are strictly construed and are not enlarged by the courts upon considerations of apparent hardship.'" Id. at 271. Further, the Supreme Court of Appeals of West Virginia concludes that "[t]he doctrine of estoppel should be applied cautiously and only when equity clearly requires it to be done." Id. at 272.

In this case, Plaintiffs have not brought themselves within some exception that would allow for equitable tolling to be applied. The statute of limitations began to run on December 4, 2020, when the Plaintiffs were made aware of the injuries and the knowledge that bed bugs and bed bug eggs can be transferred through personal items. [ECF No. 1 at 4]. While Plaintiffs allege that their subsequent injury (the discovery of bites and bed bugs in their residence in Virginia in April of 2021), would be within the two-year statute of limitations, those injuries were merely

consequential continuing damages, and not a continuing tort. Id. at 6; Ricottilli v. Summersville

Mem'l Hosp., 425 S.E.2d 629, 632 (W.Va. 1992). Finally, despite viewing the *pro se* Plaintiffs

claims in the most favorable light, the law is clear that "ignorance of the law is not a basis for

equitable tolling." U.S. v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

Consequently, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss, [ECF

No. 10], be **GRANTED** and that all of Plaintiffs' claims be **DISMISSED with prejudice.**

### C.  The undersigned recommends Defendant's Motion to Dismiss be granted as Counts I through VI of the Complaint also fail to state a claim for which relief may be granted.

In addition to the issues of Plaintiffs' time-barred claims, Plaintiffs Complaint, Counts I

through VI, fails to state a claim upon which relief may be granted. Rule 8(a) of the Federal Rules

of Civil Procedure does not generally require that claims be pled with great detail. *See* Fed. R. Civ.

P. Rule 8(a). Nonetheless, claims must be pled with sufficient detail that a defendant has fair notice

of the basis of plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). As

articulated by the Fourth Circuit:

> It is established that a complaint must contain sufficient factual matter, accepted as
> true, to state a claim to relief that is plausible on its face. We have recognized that
> facial plausibility is established once . . . the complaint's factual allegations produce
> an inference . . . strong enough to nudge the plaintiff's claims across the line from
> conceivable to plausible. In assessing the sufficiency of a complaint, we assume as
> true all its well-pleaded facts and draw all reasonable inferences in favor of the
> plaintiff. Thus, to satisfy the plausibility standard, a plaintiff is not required to plead
> factual allegations in great detail, but the allegations must contain sufficient factual
> heft to allow a court, drawing on judicial experience and common sense, to infer
> more than the mere possibility of that which is alleged.

Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017) (internal citations and

quotations omitted). As to all their claims, Plaintiffs have failed to meet this minimum threshold

for pleading. Thus, the Complaint should be dismissed as to the Defendant for failure to state a

claim for which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### 1.   *Count One (Battery)*

As for Count One (Battery), under West Virginia law, the Restatement (Second) of Torts, § 13 (1965), states the following elements for the tort of battery: An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other of a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results. W. Virginia Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004). "In order to be liable for a battery, an actor must act with the intention of causing a harmful or offensive contact with a person." Id.

Here, Plaintiffs' assert that Defendant engaged in "an intentional touching of Plaintiffs that was unwanted and without justification, excuse, or consent of Plaintiff," through Defendant's knowledge of a bedbug infestation within its rental property, Black Bear 20. [ECF No. 1 at 7]. However, Plaintiffs do not articulate any facts to support their claim, namely that Defendant had knowledge of the bed bugs prior to being informed by Plaintiff. In their Response, which could be liberally construed as an Amended Complaint, Plaintiffs do not cure this defect, but instead conclusively provide that their prior complaint plausibly shows that Defendant was knowledgeable of the infestation and rented the unit with this knowledge. [ECF No. 18 at 4]. Plaintiffs further contend that "through the discovery process [they] expect to learn more about [Defendant's] knowledge and intent." [ECF No. 18 at 4].

Based on Plaintiffs' filings, there is insufficient factual detail to infer, beyond a mere possibility, that Defendant had knowledge of such an infestation. Thus, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [ECF No. 10] be **GRANTED** and that Plaintiffs' battery claim, or Count One, be **DISMISSED with prejudice.**

### 2.   *Count Two (Fraud)*

To successfully recover under the theory of fraud, a plaintiff must prove three elements: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that the plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." Michael v. Consolidation Coal Co., No. 1:14-CV-212, 2017 WL 1197828, at *13 (N.D. W. Va. Mar. 31, 2017), aff'd, 773 F. App'x 767 (4th Cir. 2019) (quoting Trafalgar House Const., Inc. v. ZMM, Inc., 567 S.E.2d 294, 300 (W. Va. 2002)). Furthermore, the Federal Rules of Civil Procedure implement a heightened pleading standard when alleging fraud by requiring a plaintiff to plead their cause of action with "particularity." Fed. R. Civ. P. 9(b).

Here, Plaintiffs fail to allege facts which support the elements they must prove to survive the dismissal motion as to the fraud claim. Specifically, Plaintiffs fail to allege any false act or statement made by the Defendant – let alone that such act or statement was material, or that Plaintiffs were damaged because of their reliance on it. Instead, Plaintiffs base their claim of fraud on the following facts: (1) Defendant induced Plaintiff to reserve lodging at Black Bear 20; (2) Defendant invited Plaintiffs to move to Black Bear 19 while knowing of potential bedbug infestations at both locations; (3) Defendant misrepresentations of material facts regarding the safety and sanitation of the properties; and (4) that said misrepresentations were either knowingly and intentionally made with the intent to mislead Plaintiffs, or negligently made with the intent that Plaintiffs would rely on them. [ECF No. 1, at 8].

In their Response, or revised complaint, Plaintiffs do not provide any new factual allegations to support their claim of fraud, other than the assertion that Defendant knew about the infestation "as evidenced by the severity of the infestation." [ECF No. 18, at 4]. To evidence their claim, Plaintiffs point to Livingston v. H.I. Fam. Suites, in which the court found that Plaintiffs

allegations that Defendant knowingly rented an infested hotel room to Plaintiff, meet the elements of fraudulent concealment. Livingston v. H.I. Fam. Suites, Inc., 6:05-CV-860-ORL19KRS, 2005 WL 2077315, at *4 (M.D. Fla. Aug. 29, 2005).

In Livingston, Plaintiffs noticed roaches and ants in their first room, and upon being relocated, discovered insects "entering the room from behind the sofa, crawling onto Plaintiff and his children, and the finding of bed bugs on "the pillows, sheets, box spring, and mattress of the bed," and further enduring extensive bites on Plaintiffs wife and daughter that required medical treatment. Id. at *1.

Like Livingston, Plaintiffs Peter and Crista Alfano offer the "severity of the infestation" as evidence that Defendant knew or should have known of the bed bugs within Black Bear 20. However, Plaintiffs state that only Ms. Alfano suffered bites, and that they discovered only one bed bug. [ECF No. 1 at 4]. These facts do not point to a severe infestation, and even construing their Complaint most liberally as true, Plaintiffs fall far short of satisfying the heightened pleading standard for a fraud claim under Fed. R. Civ. P. 9.

Because Plaintiffs' fraud claim meets none of the elements or requirements for pleading a claim for fraud, pursuant to Fed. R. Civ. P. 9 and Fed. R. Civ. P. 12(b)(6), the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss, [ECF No. 10], be **GRANTED** and that Plaintiffs' fraud claim, or Count Two, be **DISMISSED with prejudice.**

### 3. Count Three (Intentional Infliction of Emotional Distress)

To prevail on claim for intentional or reckless infliction of emotional distress, plaintiff must show: (1) defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed bounds of decency; (2) defendant acted with intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his

conduct; (3) actions of defendant caused plaintiff to suffer emotional distress; and (4) emotional distress suffered by plaintiff was so severe that no reasonable person could be expected to endure it. Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419 (W. Va. 1998). The United States District Court for the Northern District of West Virginia has dismissed tort of outrage claims when plaintiffs have failed to include in their complaints specific factual allegations evidencing outrageous conduct. Mauro v. Infocision, Inc., 1:19-CV-6, 2019 WL 13161102, at *2 (N.D.W. Va. May 15, 2019); See, e.g., Rotriga v. AZZ, Inc., No. 5:12CV120, 2013 WL 524648 (N.D.W. Va. Feb. 11, 2013).

In Rotriga, this Court dismissed plaintiff's complaint, finding plaintiff failed to cite specific information indicating how defendant's behavior was outrageous and instead merely restated the elements of the offense in question: "Defendant's actions were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency . . . [b]y acting in such an extreme, atrocious and inexcusable manner, Defendant intended to cause the Plaintiff severe emotional distress, and [a]s a result of Defendant's outrageous conduct, Plaintiff has suffered severe emotional distress." Id. at 2-3.

Here, in support of Plaintiffs' claim of Intentional Infliction of Emotional Distress, Plaintiffs likewise fail to allege "specific factual allegations evidencing outrageous conduct." Id. Instead, Plaintiffs claim: "[i]n inducing Plaintiff to reserve lodging at Black Bear 20 . . . while knowing of potential bedbug infestations at the properties, Defendant . . . intended their specific conduct while they knew or should have known that their conduct would likely result in emotional distress; Defendant's conduct was outrageous and intolerable in that it offended the generally accepted standards of decency and morality; [and] Plaintiffs suffered severe emotional distress which was proximately caused by Defendant's conduct." [ECF No. 1, at 8]. Like in Rotriga, the

Plaintiffs have merely concluded that Defendant's behavior was intentional and outrageous without providing facts or details to specify how Defendant's behavior was intentional or outrageous. As such, Plaintiffs claim should be dismissed.

Plaintiffs' Intentional Infliction of Emotional Distress claim is nonsensical and meets none of the elements or requirements for pleading a claim for Intentional Infliction of Emotional Distress, under Fed. R. Civ. P. 9 and Fed. R. Civ. P. 12(b)(6). Thus, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [ECF No. 10] be **GRANTED** and that Plaintiffs' claim for Intentional Infliction of Emotional Distress be **DISMISSED with prejudice.**

### 4. Count Four (Gross Negligence)

To prevail on a negligence claim under West Virginia law, a plaintiff must establish a duty owed by the defendant, a negligent breach of that duty, and injuries received thereby, that were proximately caused from the breach of duty. These elements must be proved by a preponderance of the evidence. Bates v. U.S., 1:19CV171, 2020 WL 7022362, at *1 (N.D.W. Va. Nov. 30, 2020).

To prevail on a claim of gross negligence, plaintiffs generally must show the same basic elements of ordinary negligence, differing only in the degree of actionable inattention on the defendant's part. City of Charleston, W. Virginia v. Jt. Commn., 473 F. Supp. 3d 596, 625 (S.D.W. Va. 2020). *But see* Wood v. Shrewsbury, 117 W.Va. 569, 186 S.E. 294, 296-97 (1936) (Where the plaintiff seeks to establish gross negligence, he must present "affirmative proof tending to magnify the negligence."). Further, "[w]hile the West Virginia Supreme Court of Appeals has never provided its own definition of gross negligence, it has interpreted Virginia law to define gross negligence as the 'degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another.'" City of Charleston, W. Virginia v. Jt. Commn., 473 F.

Supp. 3d 596, 626 (S.D.W. Va. 2020); *see also* Rutecki v. CSX Hotels, Inc., 290 F. App'x 537, 542–43 (4th Cir. 2008).

In Bates, this Court granted a motion to dismiss on summary judgment Plaintiffs claim of an infestation of birds at Hazelton, which Plaintiff alleged were causing Plaintiffs medical issues. Bates v. U.S., 1:19CV171, 2020 WL 7022362, at *6 (N.D.W. Va. Nov. 30, 2020). In so deciding, this Court stated that "BOP staff attempted to remove the birds as soon as they were notified," "there may have only been 1 or 2 birds in the ventilation shafts . . . [which] can hardly be characterized as gross negligence . . . or a lengthy infestation . . . Plaintiff offers no detailed allegation regarding the duty owed to him by [Defendant] . . . [and] [t]here is no proof that Plaintiff's 'entire unit' was infected." Id.

Here, like Bates, the Complaint does not depict a "gross" infestation, Plaintiffs found a singular bed bug in their rental unit. Also similar to Bates, Defendant Snowshoe's agents soon attempted to remove the guests from health hazard by moving them to another rental unit and educating them about how to eradicate bed bugs. [ECF No. 1, at 4].

Upon review, the undersigned **FINDS** Plaintiffs have not sufficiently plead a claim of gross negligence, suggesting Defendant's "utter disregard of prudence amounting to complete neglect of the safety of another." City of Charleston, W. Virginia v. Jt. Commn., 473 F. Supp. 596, 626 (S.D.W. Va. 2020); *see also* Wood v. Shrewsbury, 117 W.Va. 569, 186 S.E. 294, 296-97 (1936).

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss, [ECF No. 10], be **GRANTED** to the Plaintiffs' gross negligence claim, or Count Four, be **DISMISSED.**

Plaintiffs provide limited facts in their Complaint and Response regarding rental agreement or how Defendant alleged breached any duty owed by renting out an allegedly infested house.

[ECF No. 1, ECF No. 18, at 6].  Plaintiffs do, however, allege sufficient facts that they reserved a rental cabin, Black Bear # 20, as guests at Defendant's establishment and, thus, Defendants owed them a duty of reasonable care under the circumstances. <u>Crum v. Equity Inns, Inc.</u>, 224 W. Va. 246, 253, 685 S.E.2d 219, 226 (2009) ("[L]andowners and occupiers such as Equity Inns are not liable in negligence for injuries that occur to non-trespassing entrants of their land, unless such landowners or occupiers breach their duty of reasonable care under the circumstances.").

Alas, even if this Court were to find that Plaintiffs have met the *prima face* standard for a negligence claim, for the aforementioned reasons, the claim of negligence is time-barred under West Virginia's applicable, two-year statute of limitations, and the undersigned, nonetheless, **RECOMMENDS DISMISSAL of Counts I through VI of the Complaint**, [ECF No. 1], **WITH PREJUDICE as untimely, regardless of the potential merits of the claim.**

### 5. Count Five (Negligent Infliction of Emotional Distress)

To recover for negligent infliction of emotional distress, a plaintiff must prove three things: (1) defendant's negligent conduct caused a victim (a person closely related to the plaintiff) to suffer a critical injury or death; (2) plaintiff suffered serious emotional distress as a direct result of witnessing a victim's critical injury or death; and (3) the emotional distress was reasonably foreseeable. <u>Jones v. Sanger</u>, 512 S.E.2d 590, 595 (W. Va. 1998).

The Supreme Court of Appeals of West Virginia has held that four elements are necessary to evaluate reasonable foreseeability: (1) "that a close marital or familial relationship exist[s] between the plaintiff and the victim"; (2) "that a plaintiff ... is present at the scene of the injury-producing event at the time it occurs and is aware that it is causing injury to the victim"; (3) "that the emotional trauma alleged by a plaintiff must be the direct result of either the critical injury to or death of a person closely related to the plaintiff"; and (4) that the emotional distress experienced

was serious and "reasonably could have been expected to befall the ordinarily reasonable person." Spears v. Cable News Network, CNN, 1:18-CV-162, 2019 WL 3752921, at *4 (N.D.W. Va. Aug. 8, 2019).

Here, Plaintiffs are married, meeting the requirement for a "close marital . . . relationship;" and Mr. Alfano was present at the scene when Mrs. Alfano was bitten by the alleged bed bugs and was aware that bed bugs were the cause of the injury to his wife.  However, Plaintiffs fail to assert that Mr. Alfano's "emotional trauma" was the "direct result of . . .  critical injury . . . or death" of the injured party, Mrs. Alfano. Plaintiffs allege that the injury sustained was "scores of insect bite marks across [Plaintiff, Mrs. Alfano's] shoulders, upper back, and from the upper back to the chest area." [ECF No. 1 at 4].

While these bites must have been very uncomfortable and concerning, bites were "intensely itchy and painful, causing a rash," these injuries are not the sort of "critical injury" necessary to rise to a claim of Negligent Infliction of Emotional Distress. [ECF No. 1 at 5]; *See* Jones v. Sanger, 512 S.E.2d 590 (W. Va. 1998) (a motorist watching his mother die while he lay on her lap while both were trapped in car after accident rose to a critical injury necessary for NIED). Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [ECF No. 10] be **GRANTED** and that Plaintiffs' claim for Negligent Infliction of Emotional Distress, or Count Five, be **DISMISSED.**

### *6. Count Six (Violations of the Virginia Consumer Protection Act)*

Pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), the applicable law in a diversity case is determined by the substantive law of the state in which the district court sits, including the forum state's prevailing choice of law rules. Id. "Traditionally, West Virginia courts apply the *lex loci delicti* choice-of-law rule; that is, the substantive rights between the parties are

determined by the law of the place of injury." <u>Doe v. Spiro</u>, 5:20-CV-193, 2020 WL 6333912, at *2 (N.D.W. Va. Oct. 28, 2020), <u>quoting</u> <u>McKinney v. Fairchild Int'l, Inc.</u>, 199 W.Va. 718, 727, 487 S.E.2d 913, 922 (1997). The traditional choice-of-law rule, lex loci delicti, is specifically applied in tort cases. <u>Wheeling Pittsburgh Corp. Am. Ins. Co.</u>, CIV.A. 93-C-340, 2003 WL 23652106, at *8 (W. Va. Cir. Oct. 18, 2003), <u>quoting</u> <u>Johnson v. Neal</u>, 187 W.Va. 239, 242, 418 S.E.2d 349, 352 (1992); (the "substantive rights between the parties are determined by the law of the place of injury"). Further, "a federal court sitting in diversity must apply the choice-of-law rules from the forum state." <u>Am. Ins. Co. v. Frichkorn</u>, 173 F. Supp. 2d 514, 517-18 (S.D. W. Va. 2001) (citation omitted).

Here, Plaintiffs assert that their place of injury was West Virginia, specifically, Snowshoe Mountain, a ski resort located in Snowshoe, West Virginia. [ECF No. 1, at 1]. There is no debate that the injury to Plaintiffs took place in West Virginia, that Defendant's principal place of business is West Virginia, that Plaintiffs are domiciled in Virginia, and that Plaintiffs in fact brought this claim in the Northern District of West Virginia. As such, West Virginia state law should apply to the action, not Virginia law.

Even if this court determines that Plaintiffs may make a claim under the Virginia Consumer Protection Act, Plaintiffs fail to assert a valid claim under the Act. Under the Virginia Consumer Protection Act a misrepresentation of fact is a necessary element of proof to a claim for common-law fraud or a claim for a violation of the Consumer Protection Act. Code 1950, § 59.1-196 et seq. <u>Lambert v. Downtown Garage, Inc.</u>, 553 S.E.2d 714 (Va. 2001). Misrepresentation, the falsity of which will afford grounds for an action for damages in fraud, must be of an existing fact, and not the mere expression of an opinion. <u>Id.</u>

In <u>Lambert</u>, plaintiff purchased a vehicle from a downtown garage, and, at the time of purchase, defendant-garage stated that a vehicle was "in excellent condition." <u>Id</u>. at 715. After the purchase of the vehicle, plaintiff experienced occasions when the vehicles power windows and power door locks failed to operate properly. <u>Id</u>. In December of 1995, the vehicle caught fire while Plaintiff was driving; Plaintiff was unable to unlock the driver's side door and was badly burned as a result. <u>Id</u>. Plaintiff filed suit alleging that Defendant had sold the vehicle in violation of the Consumer Protection Act, specifically relying on the statement made by Defendant that the vehicle was in "excellent condition," and claiming this was a material misrepresentation of fact. <u>Id</u>. The Supreme Court of Virginia held that, "[e]ven in the light most favorable to [Plaintiff], [Defendant's] statement that the vehicle was in 'excellent' condition cannot be viewed as anything more than an opinion. *Merely stating that property is in excellent condition, without more, is clearly a matter of opinion in the manner of puffing*. <u>See, e.g.</u>, <u>Tate</u>, 257 Va. at 84, 508 S.E.2d at 600 ('highest quality'); <u>Henning</u>, 190 Va. at 252, 56 S.E.2d at 69 ('good condition'). Consequently, this statement did not constitute fraud or violate the Consumer Protection Act." <u>Lambert v. Downtown Garage, Inc.</u>, 553 S.E.2d 714, 717 (Va. 2001) (emphasis added).

Here, Plaintiffs rely on three statements by the Defendant: (1) that Defendant "had 'high standards of cleanliness;'" (2) that Defendant "would 'delay occupancy until the unit has been properly cleaned and inspected;'" and (3) that Defendant "'homes are well maintained and clean.'" [ECF No. 1, at 11]. These statements are directly analogous to the claim in <u>Lambert</u>, in which the Supreme Court of Virginia, held that "[m]erely stating that property is in excellent condition, without more, is clearly a matter of opinion in the manner of puffing" and does not "constitute fraud or violate the Consumer Protection Act." <u>Lambert v. Downtown Garage, Inc.</u>, 553 S.E.2d

714, 717 (Va. 2001). As such, Plaintiffs claims would not meet the requirement for fraud or violation of the Consumer Protection Act.

Thus, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [ECF No. 10] be **GRANTED** and that Plaintiffs' claim for violations under the Virginia Consumer Protection Act be **DISMISSED**.

### D. The undersigned recommends that Counts I through IV be dismissed as I through IV are barred under the Gist of the Action Doctrine.

In seeking to prevent the recasting of a contract claim as a tort claim, courts often apply the gist of the action doctrine, under which recovery in tort will be barred when any of the following factors is demonstrated: (1) liability arises solely from the contractual relationship between the parties, (2) when the alleged duties breached were grounded in the contract itself, (3) where any liability stems from the contract, and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. Gaddy Engr. Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568 (W. Va. 2013).

Whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract. Id. "[A]ction in tort [must] arise independent of the existence of the contract." Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc., 783 F.3d 976, 981 (4th Cir. 2015), quoting Cochran v. Appalachian Power Co., 162 W.Va. 86, 246 S.E.2d 624, 628 (1978) (internal quotation marks and citation omitted). "If the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or non-feasance, it is, in substance, an action on the contract, whatever may be the form of the pleading." Id.

In their Motion to Dismiss Counts I Through IV of Complaint, Defendant Snowshoe Mountain, Inc.'s asserts that the counts of battery, fraud, IIED, gross negligence, and violations of the VCPA should be dismissed as these tort claims are barred by the gist of the action doctrine. [ECF No. 10, at 18]. Defendant states that these claims are "simply breach of contract claims masquerading as tort claims." Id.

Plaintiffs respond that Defendant's argument is misplaced, as the gist of the action doctrine only applies "'where liability arises solely from the contractual relationship between the parties' and 'when the alleged duties breached were grounded in the contract itself.'" [ECF No. 18 at 8]. In this situation, Plaintiffs claim that "Snowshoe owed a duty of care to its guests independent of its contracts." Id.

Defendant replies that despite Plaintiffs assertion, the "gist of the action doctrine applies because liability arises solely from the contractual relationship between the parties and the alleged duties breached are grounded in the contract." [ECF No. 19, at 12]. Defendant uses as an example Plaintiffs breach of contract claim in Count VII, and further assert that Plaintiffs ignore the express limitation of liability within the Agreement between the parties. Id. As such, Defendant asserts that this is "precisely the kind of case where the gist of action doctrine applies because Plaintiffs claims . . . are simply breach of contract claims masquerading as tort claims." Id.

Here, all claims arising from this action come directly from the contract formed between the Plaintiffs and Defendant for the vacation rental, Black Bear 20. Courts apply the gist of the action doctrine when any of the following are demonstrated: (1) liability arising solely from the contractual relationship between the parties, (2) the alleged duties breached were grounded in the contract itself, (3) liability stems from the contract, and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the

success of the breach of contract claim. <u>Gaddy Engr. Co. v. Bowles Rice McDavid Graff & Love,</u> <u>LLP</u>, 746 S.E.2d 568 (W. Va. 2013). The liability in this case arises solely from the contractual relationship between the parties, and the Plaintiffs rely on violations of the contracts express warranties to support their claims. [*See* ECF No. 1, at 11].

Thus, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [ECF No. 10] be **GRANTED,** and that Plaintiffs' Counts I Through IV be **DISMISSED** pursuant to the gist doctrine.

### IV. RECOMMENDATIONS AND CONCLUSIONS

For the reasons stated herein, the undersigned **RECOMMENDS** that Defendant's partial Motion to Dismiss, [ECF No. 10], be **GRANTED** and Counts I through Six Plaintiffs' Complaint [ECF No. 1] be **DISMISSED with prejudice.** The undersigned **RECOMMENDS** that Count Seven of Plaintiff's Complaint, Breach of Contract and Implied Warranty of Habitability, proceed to scheduling and discovery before the Court in normal course.

Any party shall have **<u>fourteen (14) days</u>** from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Thomas S. Kleeh, United States District Judge.

Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of**

**appellate review by the Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all counsel of record by electronic means, and to the *pro se* Plaintiffs by certified mail, return receipt requested.

Respectfully submitted on May 19, 2023.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE